**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|   |   |   |
|---|---|---|
| RAIMUNDO SOBRINHO, | ) ) ) | C.A. No. 3:23-cv-883-KAD |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| N.S.J CONSTRUCTION, INC, and NELSON DASILVA, JR., | ) ) ) | |
| Defendants. | ) ) | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT**

**I.   INTRODUCTION**

At a status conference with the Court on February 22, 2024 (*see* Dkt. 33), the Parties reported that a settlement in principle had been reached between Plaintiff Raimundo Sobrinho ("Plaintiff"), and Defendants N.S.J. Construction, Inc. ("NSJ") and Nelson DaSilva, Jr. ("DaSilva") (collectively "Parties"). The Settlement Agreement ("Agreement") has been made on an individual basis and does not impact or prejudice the rights of any individuals who might have joined this action had it been certified. However, given that Plaintiff Sobrinho has asserted claims under the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 201, *et seq*, (*see* Dkt. 1, Counts IV, V), judicial review and approval is required before the Agreement can be effectuated and this action dismissed. *See Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As explained further below, the Agreement meets and exceeds the standard for approval. The Parties had a *bona fide* dispute involving novel factual issues. The novel underlying situation ultimately resulted in a unique settlement that provides a critical benefit to Plaintiff while avoiding the

1

likelihood of continued and fast evolving disputes between the Parties.[1]  Moreover, at bottom, the value of the Settlement is especially fair and reasonable compared to the value of Plaintiff's claims, the litigation risks in this case, as well as other legal risks to Plaintiff that he likely would have faced in state court absent a resolution.

## II.     LEGAL STANDARD

The two limited circumstances in which FLSA claims may be compromised are: (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) **or** (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is "fair and reasonable." *Flores v. Food Express Rego Park, Inc.*, No. 15-cv-1410 (KAM)(SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016) (quoting

---

[1]    At the status conference on February 22, 2024, the Parties explained to the Court one of the most material terms of the Settlement, which is of immense benefit and importance to Plaintiff.  *See* Agreement at ¶ 6.  Out of an abundance of caution, Plaintiff is not referring to the *specific* terms here because the Settlement Agreement is being submitted *in camera* in view of a confidentiality provision.  The confidentiality provision has various exceptions to protect Plaintiff, but generally requires Plaintiff to adhere to confidentiality.  In this unique case, where no absent class or collective members are subject to the agreement, the provision was appropriate and necessary to reach an important agreement here.

*Wollinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472-KBF-DCF, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* [2] Importantly, "[e]valuation of an FLSA settlement is less rigorous than the court's evaluation of a class action settlement 'because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date.'" *Romero v. La Revise Associates, L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)).

## III. ANALYSIS

The Settlement Agreement in the instant case meets the requirements for fairness and reasonableness and the goals of the FLSA and should be approved by the Court. Plaintiff contends this Settlement Agreement is exceptional and results in him receiving more than the full likely value of his single damages (and it avoids further entanglement between the Parties, includingdisputes that were arising between them in addition to this action). The Parties negotiated at arm's lengths over the course of approximately five (5) months to reach this agreement.

---

[2] As part of this analysis, the Court should consider the plaintiff's range of possible recovery; the extent to which the settlement will allow the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; the seriousness of the litigation risks faced by the parties; whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 235.

As explained to the Court at the status conference on February 22, 2024, in general the Agreement is straightforward and unremarkable for a wage-and-hour settlement agreement, with the noteworthy exception of the terms of Paragraph 6. Paragraph 6 is a novel term that was the product of arm's length bargaining. Without the inclusion of this provision, it appeared resolution would have been illusive, and Plaintiff would have faced numerous litigation and financial risks in the Agreement's absence. The inclusion of innovative terms that help the parties reach agreement, while proving a benefit to plaintiff(s), weighs in favor of settlement approval in cases where court approval is required. *See*, e.g., *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998) (approving of district court's consideration of "the 'innovative' terms of the settlement" reached by plaintiffs' counsel). That is especially true in this unique case.

Moreover, Plaintiff's counsel's fee is modest, especially when compared to the over value of the Settlement (*see* Agreement at ¶ 7(b), n. 2) and effort and skill needed to reach this Agreement. Had the Agreement been structured in alternative ways, Plaintiff's counsel likely would have received a larger contingency fee compared to the relatively modest fee under the agreement. *Id*. However, had the Agreement been structured in alternatives ways, a key result achieved in Paragraph 6 of the Agreement would have been elusive. As reflected in the Agreement, Plaintiff's counsel has been able to obtain an excellent result for their client and the terms in Paragraphs 6 and 7 are exceptionally fair to Plaintiff and desirable. Plaintiff's counsel carefully constructed Paragraphs 6 and 7 of the Agreement **to ensure that critical conditions precedent will be satisfied <u>before</u> this action is dismissed with prejudice following court-approval**. Accordingly, the Court can rest assured that by the Parties file a joint stipulation of dismissal, the core terms in Paragraphs 6 and 7 will have already been effectuated. And in the

unlikely event that a dispute did arise between the Parties related to the terms of the Settlement Agreement, Paragraph 26 provides that the Court will maintain jurisdiction to effectuate the terms of the Agreement.

Finally, a mutual release here was an important component of the deal that protects all Parties from additional legal risks that could have resulted in additional litigation in this Court and in state court. See, e.g. *Cionca v. Interactive Realty, LLC,* No. 15-CV-05123 (BCM), 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) (finding mutual general releases in an individual settlement to be fair and reasonable where they were "negotiated by competent counsel for both sides," the plaintiff was "no longer an employee of the defendants," and where it was a sensible means "to bring closure to both sides"). Moreover, courts in this circuit have recognized that in the specific context of ***individual*** FLSA settlements (as opposed to collective or class settlements that bind absent class members), "mutual waiver and release provisions are a fair and reasonable outcome of balanced negotiations, occurring over several months, which will bring closure to both sides." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556 (W.D.N.Y. 2018).[3] A mutual release is appropriate here given the substantial and novel considerations at issue. An agreement would not have been attainable absent assent to the

---

[3] In other words, potential concerns with broader releases binding absent class members (who may not be in a position to fully weigh the pros and cons of assenting to a mutual release when an agreement is reached) are not present here in this individual action where Plaintiff Sobrinho was involved in negotiations and personally signed off on and desires the Agreement. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("the Court is satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel.").

release. Nonetheless, Plaintiff was able to negotiate an ***important carveout*** from the scope of the release to make clear that he is not releasing his ongoing Workers' Compensation Claims (*see* Chapter 568 of the Connecticut General Statutes), which he is currently litigating with the representation of other counsel who have been made aware of the carveout. Thus, this important carveout allows the Parties to substantially untangle their soured relationship while protecting Plaintiff's right to pursue pending statutory workers' compensation claims. And because the release at issue is a "mutual release" Plaintiff has also protected himself from potential risks that were raised during settlement negotiations. At bottom, this Agreement substantially untangles the Parties while providing Plaintiff with an excellent result. The approval of this Agreement will avoid high stakes litigation in this Court (and potential litigation in state court) while providing Plaintiff with an exceptional result. The Parties bargained at arm's length over the course of many months to achieve this result and it should be approved upon review.

### IV.     CONCLUSION

For the foregoing reasons, the Parties respectfully requests that the Court promptly approve the settlement following the Court's review of the Agreement. A proposed order is attached hereto as **Exhibit A**. Under the circumstances, the Parties believes the Court may approve the Settlement Agreement on the papers (especially given the background the Parties previously provided the Court regarding its terms on February 22, 2024). However, in the Court's sound discretion, the Parties would be pleased to attend a telephone or in-person hearing (should the Court deem it appropriate or desirable).

Dated: March 20, 2024                                    Respectfully submitted,


*/s/ Zachary L. Rubin*

Zachary L. Rubin, (ct30192)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
zrubin@llrlaw.com

*Attorney for Plaintiff*


*/s/ Douglas J. Lewis*
Douglas J. Lewis, CT Bar # 01079
Evans & Lewis, LLC
93 Greenwood Avenue
Bethel, CT 06801
(203) 743-7644
(203) 797-9921 Fax
Lewisdouglas74@yahoo.com

*Attorney for Defendants N.S.J. Construction, Inc., and Nelson DaSilva, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on this the 20th day of March, 2024.

                                            */s/ Zachary L. Rubin*

                                            Zachary L. Rubin, Esq.